NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0345n.06

No. 17-6492

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Jul 08, 2019<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| MATTHEW SHAFFER, | ) | |
| Defendant-Appellant. | ) | |

BEFORE: MERRITT, DAUGHTREY, and STRANCH, Circuit Judges

MARTHA CRAIG DAUGHTREY, Circuit Judge. In 2016, Matthew Shaffer organized and executed two distinct but related conspiracies to distribute methamphetamine. The first occurred between June and August of that year, during which time Shaffer and various companions made three trips from Kentucky to California in order to collect and bring back large quantities of crystal methamphetamine. The second conspiracy took place months later while Shaffer was incarcerated at Boone County Detention Center. As a result, Shaffer was convicted in federal court of five charges related to the possession and distribution of methamphetamine and two charges related to the possession of firearms. The district court sentenced Shaffer to 420 months' imprisonment. Shaffer appeals his convictions and sentence, alleging that the district court erred by: (1) denying his motion to suppress evidence and denying a related evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978); (2) refusing to provide separate trials for each conspiracy; (3) declining to compel disclosure of the identity of a confidential informant;

(4) admitting certain opinion and fact testimony into the record; (5) refusing to grant a mistrial; (6) denying his Rule 29 motion for a judgment of acquittal; and (7) imposing a procedurally and substantively improper 420-month prison sentence. Shaffer has not established sufficient evidence of legal error or prejudice to support any of these claims. We therefore **AFFIRM** his convictions and sentence.

**FACTUAL AND PROCEDURAL BACKGROUND**

**The California Conspiracy**

This case begins in Northern Kentucky, where Matthew Shaffer, a longtime ranking member of the motorcycle gang the Iron Horsemen, lived and conducted business. Between June and August of 2016, Shaffer traveled three times from Kentucky to Los Angeles, California. On the first of these visits, he traveled alone, but on his second and third visit he was accompanied by various friends and associates, including his then-girlfriend Abigail Wilder. During each trip, Shaffer and his companions returned to Kentucky from California with large amounts of crystal methamphetamine, totaling as much as two-and-a-half pounds.

Sometime in August 2016, the Northern Kentucky Drug Strike Force received a tip from an unnamed confidential informant about Shaffer's involvement with the Iron Horsemen and drug trafficking, and the location of Shaffer's home on High Street in Walton, Kentucky. Because the informant had previously provided accurate information to the Federal Bureau of Investigation, the Strike Force ruled the tip credible. Strike Force officers decided to do a "trash pull"—an investigative method in which officers collect and search some or all of the garbage left on the curb outside of a residence.

In the early morning of August 24, 2016, two Strike Force officers surveilled Shaffer's residence for approximately 15 minutes before conducting the trash pull. Their search produced

mail addressed to Shaffer, a grocery receipt, and a plastic bag that contained a small amount of a substance confirmed by a field test to be crystal methamphetamine. The next day, having secured a warrant, the officers, as well as other members of the Strike Force, set up surveillance around the High Street residence. Shortly after Shaffer arrived home, the officers searched the house. They uncovered a black case containing a plastic bag holding 184 grams of what was later determined to be crystal methamphetamine, $8,920.00 in cash, paperwork concerning the purchase and title of a motorcycle belonging to Shaffer, a digital scale, a rifle, a loaded handgun, a blender covered in unidentified white residue, Inositol (a substance often used to cut methamphetamine), a bullet proof vest, and a locked safe. Within the safe, the officers found a magazine loaded with hollow-point "critical defense" ammunition, assorted legal documents belonging to Shaffer, and various differently-sized plastic baggies—some of which matched the bag found during the trash pull.

Immediately following the search, the officers arrested Shaffer. He was incarcerated at the Boone County Detention Center and assigned to cell 1209, which houses all inmates who have racist tattoos or who express to the jailhouse officers that they are racist.

**The Jailhouse Conspiracy**

While detained, Shaffer became known as the leader of cell 1209 and made the acquaintance of several other prisoners, including Michael Howell. Following Shaffer's arrival at the jail, Howell was released but, because he had nowhere to go, "got [him]self arrested" so that he could return to jail. Howell was once again placed in cell 1209, presumably because of his manifest racism. It seems that, realizing Howell could leave the jail, return, and be guaranteed an assignment in cell 1209, Shaffer devised a plan to bring contraband into the jail. Shaffer would

arrange for payment of Howell's bond so that, upon Howell's release, he could purchase contraband items and smuggle them back into the jail.

In October 2016, Shaffer and Howell executed their plan, but a few days after returning to the jail and delivering the contraband—including two cell-phone watches, tobacco, marijuana, and approximately ten grams of methamphetamine—Howell confessed to the guards his role in the conspiracy. The Detention Center officers searched cell 1209 and found the watches. They also searched each inmate individually and, when conducting a search of Shaffer, found a small baggie containing what was later confirmed to be 98 percent pure crystal methamphetamine.

**Procedural Background and Trial**

Shaffer was eventually indicted on seven charges related to the California plot and the Boone County conspiracy. The first four counts arose from the California plot:

I. Conspiring to distribute, and possess with intent to distribute, 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846;
II. Possessing with intent to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1);
III. In furtherance of the drag-trafficking crimes charged in Counts I and II, possessing a firearm, in violation of 18 U.S.C. § 924(c)(1);
IV. Having been convicted of a felony, possessing a firearm in and affecting interstate and foreign commerce, in violation of 18 U.S.C. § 922(g)(1);

Counts five through seven arose from the actions at Boone County Detention Center:

V. Conspiring to distribute, and possess with an intent to distribute, a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 846;
VI. Aiding and abetting the distribution of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2;
VII. Possessing with intent to distribute a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

Shaffer moved the district court to suppress evidence obtained during the August 25, 2016, search of his residence on High Street, and requested a hearing pursuant to *Franks v. Delaware*,

438 U.S. 154 (1978). The district court did not grant either request. The district court also denied Shaffer's motion to sever the Boone County conspiracy charges from those charges dealing with the California plot. Finally, the district court declined to order disclosure of the confidential informant's identity. At trial, Shaffer unsuccessfully renewed his motions for severance and for compulsion of the informant's identity.

Following a five-day trial, the district court denied Shaffer's motion for a judgment of acquittal as to the firearms charges. The jury then convicted Shaffer of Counts 1 through 6 and of a lesser-included charge on Count 7. The district court sentenced Shaffer to 420 months in prison. Shaffer now appeals his convictions and sentence.

## DISCUSSION

Shaffer raises several issues on appeal. In addition to arguing that his sentence is both procedurally and substantively improper, he challenges the denials of his motions to suppress, for a *Franks* hearing, for severance, to compel disclosure of the informant's identity, and for acquittal. Additionally, Shaffer alleges that the district court should have declared a mistrial after a cooperating witness testified that Shaffer threatened the prosecutor in the case, and he claims that the district court improperly admitted expert testimony from a police officer and lay testimony from Shaffer's girlfriend, Abigail Wilder. We review each claim in turn.

### *Franks* Hearing and Motion to Suppress

In *Franks v. Delaware*, the Supreme Court provided that if a defendant alleges that the affidavit supporting a search warrant issued against him manifested "deliberate falsehood or . . . reckless disregard for the truth," and substantiates his allegations with an offer of proof, the defendant is entitled to an evidentiary hearing to explore the veracity of the affidavit. 438 U.S. 154, 171–72 (1978). A defendant must make two showings as part of this offer of proof,

(1) "that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit" and (2) "that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015).

Shaffer claims that he was entitled to a *Franks* hearing because the affidavit underlying the search warrant issued before the High Street search excluded various details. In addition to his request for a *Franks* hearing, Shaffer moved to suppress the evidence discovered as a result of the allegedly-deficient warrant. The district court denied his motion to suppress and his request for a *Franks* hearing. In considering these denials, we review the district court's factual findings for clear error and its conclusions of law *de novo*. *Id.*

In support of his *Franks* claim, Shaffer identifies several seemingly irrelevant details excluded from the affidavit. However, we need not consider their materiality because Shaffer has not made any showing—beyond his bare-bones, conclusory allegations—that the affiant excluded this information "with an intention to mislead." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) (emphasis deleted). A showing of the affiant's knowledge or intentionality is a prerequisite to establishing entitlement to a *Franks* hearing. *See United States v. Young*, 847 F.3d 328, 349 (6th Cir. 2017); *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Without such a showing, the district court was not required to provide Shaffer with an evidentiary hearing. Moreover, our case law requires that establishing entitlement to a *Frank* hearing requires a defendant to show that "probable cause does not exist absent the challenged statements." *Bennett*, 905 F.2d at 934. Shaffer also failed to meet this burden.

Shaffer premises his motion-to-suppress claim on the same errors he identified in seeking a *Franks* hearing, arguing that the incorrect and incomplete information should be discarded from

the affidavit. This "excision," in Shaffer's view, renders the affidavit insufficient to establish probable cause. However, as we have repeatedly stated, an "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or what a critic might say should have been added." *United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008) (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000)). The affidavit in Shaffer's case provided enough information to establish the confidential informant's reliability by explaining the informant's prior relationship with the FBI. Additionally, the affiant corroborated the information with research, surveillance, and the trash pull. *Compare Martin*, 526 F.3d at 936–37 (finding assertion of previously provided accurate information sufficient to establish reliability, especially when corroborated by an independent investigation) *with United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (finding affidavit insufficient to establish probable cause where affiant made "no averments about the reliability of the information provided" and did not corroborate the information provided). For these reasons, we conclude that the district court did not err in denying Shaffer's motion to suppress or in refusing to grant a *Franks* hearing.

**Motion to Sever**

Federal Rule of Criminal Procedure 14(a) allows a district court to separate trials of counts if joinder of the offenses will prejudice the defendant. Fed. R. Crim. P. 14(a).[1] Pursuant to this rule, Shaffer sought to sever his trial on Counts I through IV (the California conspiracy) from his trial on Counts V through VII (the jailhouse conspiracy) because the facts of the latter plot would likely suggest to the jury that Shaffer was racist and violent and, thus, might lead them to convict

---

[1] We note that Federal Rule of Criminal Procedure 8 also governs joinder and severance. Shaffer has not raised a claim related to Rule 8. Moreover, it is clear that Shaffer's alleged offenses are of a similar nature and happened close to one another in time. That, together with the fact that the Boone County conspiracy arose as a direct result of Shaffer's arrest for the offenses charged in the California scheme lead us to easily conclude that joinder of the offenses met Rule 8's requirements. Fed. R. Crim. P. 8(a); *see also United States v. Cody*, 498 F.3d 582, 586 (6th Cir. 2007) (citing *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002)).

him on unrelated counts. The district court denied Shaffer's motion. Shaffer challenges the denial, arguing that the joinder prejudiced him. His concerns are not unfounded. The Supreme Court has recognized that propensity evidence may taint a jury's opinion of a defendant and lead jurors to assume his guilt unduly. *See, e.g., Old Chief v. United States*, 519 U.S. 172 (1997). However, to succeed on a Rule 14(a) claim, it is not enough to show only "some potential jury confusion." *United States v. Johnson*, 763 F.2d 773, 777 (6th Cir. 1985) (quoting *United States v. Gallo*, 763 F.2d 1504, 1524 (6th Cir. 1985)). To succeed on appeal, Shaffer must demonstrate that the jury was unable "to treat distinctively evidence" from separate claims. *Id.* (quoting *United States v. Gallo*, 763 F.2d 1504, 1524 (6th Cir. 1985)). We will disturb the district court's ruling only if it was an abuse of discretion. *Id.*

Shaffer does not establish a need for severance because he failed to put forward anything more than speculation to demonstrate the jury's inability to compartmentalize the facts related to each of the offenses. *See United States v. Cody*, 498 F.3d 582, 587 (6th Cir. 2007) (noting prejudicial joinder is unlikely when evidence is easily separated). The schemes underlying each of Shaffer's charges were clearly independent of one another and, to provide additional protection against conflation of the facts, the district court delivered to the jury a limiting instruction that matched nearly verbatim an instruction previously approved by this court in *United States v. Chavis*, 296 F.3d 450, 461–62 (6th Cir. 2002). Finally, a wealth of evidence supported the jury's verdicts in each of the counts against Shaffer, controverting any hint of potential bias. *See id.* at 563 ("[I]n light of the overwhelming evidence . . . , we discern little basis for finding prejudice."). The district court did not abuse its discretion by denying Shaffer's motion to sever.

**Motion to Compel Identity of Confidential Informant**

Shaffer also argues that the district court abused its discretion by declining to order the disclosure of the government's confidential informant. *See United States v. Beals*, 698 F.3d 248, 269 (6th Cir. 2012) (stating standard of review). Again, we disagree. The government has a limited privilege to preserve the anonymity of an informant in light of the public's interest in protecting the flow of information. *United States v. Doxey*, 833 F.3d 692, 706 (6th Cir. 2016). But, "[w]here the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957). This rule reflects a careful balance and so, to compel the disclosure of an informant's identity, a defendant must provide "some evidence that disclosure . . . would assist in his defense." *Doxey*, 833 F.3d at 707 (quoting *United States v. Ray*, 803 F.3d 244, 274 (6th Cir. 2015)).

Shaffer protests the fairness of maintaining the informant's anonymity and alleges that details related to the informant's presence in Shaffer's home could have helped him craft his defense, but he sheds no light on how or why that information would have been helpful. "[M]ere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." *Id.* (internal quotation marks and citations omitted)*; cf. Roviaro*, 353 U.S. at 64 (informant was sole witness to the alleged crime and possessed information that was "highly relevant" to defendant's case.). Furthermore, the tipster here merely "helped orchestrate *the search* that led to discovery of incriminating evidence, not the crimes themselves." *Beals*, 698 F.3d at 270. "We usually deny disclosure when the informer . . . was a mere tipster or introducer," and the Sixth Amendment right to confrontation is not implicated when information is offered "merely

by way of background," as it was here. *Doxey*, 833 F.3d at 707–08 (internal quotation marks and citations omitted). Shaffer's Sixth Amendment claim therefore also fails.

**Admission of Certain Testimony**

Shaffer next challenges the district court's admission, over Shaffer's objection, of testimony from Jeff McKinley, an expert in drug-trafficking investigations, as well as lay witness testimony from Abigail Wilder. Shaffer argues that the district court's individual rulings each constituted error and that, even if we find they do not, together, the admissions amount to cumulative error. We review a district court's evidentiary rulings for an abuse of discretion and will find erroneous rulings to be reversible error only if they "[are] not harmless; that is, only if [they] affected the outcome of trial." *United States v. Miner*, 774 F.3d 336, 348 (6th Cir. 2014).

### McKinley's Expert Testimony

Shaffer claims that McKinley, a law-enforcement officer with graduate-level training and over a decade of on-the-job experience in methamphetamine-trafficking investigations, lacked the requisite qualifications to offer expert testimony on a matter of fingerprint collection. This argument fails. We give trial judges wide berth in making discretionary judgments related to the admission of expert testimony. *United States v. Pearce*, 912 F.2d 159, 163 (6th Cir. 1990). McKinley's credentials speak for themselves, and the district court's decision to admit the testimony was not "manifestly erroneous." *Id.* Moreover, even if there was error, it is implausible that testimony on this single, largely irrelevant, issue was anything but harmless.

Second, Shaffer argues that McKinley's expert testimony should have been excluded because it was unnecessary and unhelpful to the jury. But this court long ago recognized that qualified officers have knowledge of drug-trafficking operations "beyond the understanding of the average layman." *Id.* (internal quotation marks and citations omitted). We therefore "regularly

allow . . . qualified law enforcement personnel to testify on characteristics of criminal activity, as long as cautionary instructions are given," as they were here. *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004) (internal quotation marks and citations omitted). The district court did not err in admitting McKinley's testimony about drug-trafficking operations.

Third, Shaffer asserts that the district court improperly admitted testimony opining on Shaffer's mental state, in violation of Federal Rule of Evidence 704(b). For the most part, Shaffer attacks testimony that falls squarely in the ambit of Rule 704(b) because it "described in general terms the common practices" of drug traffickers. *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004) (quoting *United States v. Frost*, 125 F.3d 346, 383 (6th Cir. 1997)). Shaffer does point to one instance when McKinley stated that, based on the guns' proximity to the drugs seized during the home search, he did not believe the firearms found in Shaffer's home were "for an innocent purpose." Here, McKinley arguably crossed the line of permissibility. *See Miner*, 774 F.3d at 349 ("[T]the government should not spoon-feed its theory of the case to the jury through a government agent." (internal quotation marks, alternations, and citations omitted)).

However, even if we assume that all the testimony about which Shaffer complains violated Rule 704(b) and was erroneously admitted, the error was harmless. *See id.* (finding error harmless when "voluminous evidence was properly admitted at trial indicating" guilt). Absent McKinley's testimony, considerable evidence supported an inference of Shaffer's intent and guilt, including his own admissions and the wide variety of paraphernalia associated with drug trafficking found in his home. And, the district court mitigated any potential harm by issuing clear and comprehensive jury instructions about expert testimony and permissible inferences regarding Shaffer's mental state. Thus, we cannot find that any of McKinley's potentially impermissible testimony "affected the outcome of the trial." *Miner*, 774 F.3d at 348.

**Wilder's Testimony**

Shaffer's complaint about Wilder's testimony is similarly unavailing. Wilder testified that she received threats from a member of Shaffer's motorcycle gang, the Iron Horsemen. The district court sustained Shaffer's hearsay objection in part and did not permit Wilder to testify about what was said to her. However, because the government had the right to follow-up on and clarify a line of questioning initiated by the defense, *see United States v. Segines*, 17 F.3d 847, 856 (1994) ((6th Cir. 1994), the court allowed Wilder to relay the nature of the interaction. Shaffer contends that the testimony had no probative value and that he suffered prejudice. "The district court is afforded broad discretion in making this determination; therefore, we review for abuse of discretion and must maximize the probative value of the challenged evidence and minimize its potential for unfair prejudice." *United States v. Adams*, 722 F.3d 788, 812 (6th Cir. 2013) (internal quotation marks and citations omitted). Wilder's limited testimony was not especially shocking or offensive, and its emergence in response to *defense* counsel's inquiry renders it relevant. *See Segines*, 17 F.3d at 856. Further, the weight of other evidence presented at trial, including the undisputed fact of Shaffer's membership in the Iron Horsemen, undermines his prejudice claim. Considering the case against Shaffer in its totality, we cannot conclude that this small piece of Wilder's testimony impacted Shaffer's verdict, so we find no abuse of discretion.

**Cumulative Error**

Having found that each piece of challenged testimony did not constitute reversible error on their own, we now must consider whether, taken together, they do. "Under cumulative-error analysis, 'a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair.'" *United States v. Warman*, 578 F.3d 320, 349 (6th Cir. 2009) (quoting *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004)). In

*Warman*, we found no error where the trial included other evidence corroborating the substance of the challenged testimony and supporting an inference of the defendant's guilt. *Id.* The same is true here. Multiple witnesses offered testimony regarding the baggies, digital scale, cash, and other items uncovered in the High Street search and the prevalence of these items in drug-trafficking operations. Additionally, multiple witnesses provided testimony suggesting or directly alleging that Shaffer was involved in drug-trafficking and a member of the Iron Horsemen. In light of this, we cannot say that any combined effect of the alleged errors was prejudicial. *See id.*; *see also United States v. Collins*, 799 F.3d 554, 599 (6th Cir. 2015).

**Denial of Motion for Mistrial**

Shaffer also contends that the district court erred in refusing to grant a mistrial following a cooperating witness's testimony that Shaffer threatened the prosecutor in this case. To determine whether a district court abused its discretion by denying a motion for a mistrial in response to improper statements made at trial, we consider five factors: "(1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether a limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant." *United States v. Caver*, 470 F.3d 220, 243 (6th Cir. 2006) (citing *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003)).

Considering these factors, we find the district court did not abuse its discretion. The witness offered the challenged testimony in response to a question from defense counsel on cross-examination. It was neither unsolicited nor unrelated to the line of inquiry, and it does not appear to have been offered in bad faith. Following the prejudicial statement, the district court struck the testimony from the record and admonished the jury not to consider it. The court repeated this

instruction regarding stricken testimony at the end of the trial. Finally, as we have repeatedly discussed, ample evidence substantiated Shaffer's guilt. *See Caver*, 470 F.3d at 243–44.

**Motion for Judgment of Acquittal**

Turning to Shaffer's next issue on appeal, we must consider whether the district court erred in denying Shaffer's Rule 29 motion seeking a judgment of acquittal on the firearms charges. Count III charged Shaffer with possessing firearms in furtherance of drug-trafficking crimes in violation of 18 U.S.C. § 924(c)(1). Count IV charged Shaffer with being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). Shaffer contends that the prosecution failed to present adequate evidence to establish that he "possessed" the rifle and handgun found at High Street and that the prosecution did not establish that the firearms were used "in furtherance" of drug-trafficking crimes. We apply *de novo* review to a district court's denial of a motion for judgment of acquittal. *United States v. Burchard*, 580 F.3d 341, 352 (6th Cir. 2009). We will affirm the district court's ruling "if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt. This court will not substitute its judgment for that of the jury." *Id.* (internal quotation marks and citations omitted).

Shaffer first argues that the prosecution failed to meet its burden under 18 U.S.C. § 924(c)(1) and § 922(g)(1) because it did not establish that he "possessed" the 9mm rifle and the .39 caliber handgun found during the search of the High Street residence. Shaffer rests his argument upon the fact that no witness testified to seeing him with either firearm and the fact that the handgun belonged to his wife. He also argues that he did not live at the High Street residence and, thus, could not have possessed the firearms found there. These arguments have no merit.

Under § 924(c)(1) and § 922(g)(1), constructive possession is sufficient to establish guilt. *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007). And joint possession can constitute constructive possession. *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005). Thus, the lack of eye witness testimony and ownership by Shaffer's wife are irrelevant. The prosecution had to show only that Shaffer "knowingly ha[d] the power and intention to exercise dominion and control over the discovered firearm[s]." *United States v. Grubbs*, 506 F.3d 434, 440 (6th Cir. 2007). "[P]resence *alone* near a gun" cannot suffice to establish constructive possession, but presence alongside "other incriminating evidence" can "tip the scale in favor of sufficiency." *Arnold*, 486 F.3d at 183 (internal quotation marks and citations omitted). This persuasive evidence might include a defendant's "connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008).

At trial, the prosecution provided evidence establishing Shaffer's connection to the rifle and the handgun. Shaffer himself testified that his friend lent him the rifle, allegedly to shoot racoons. The rifle was found in Shaffer's bedroom closet, and police discovered its ammunition in a safe where Shaffer kept various personal legal documents, including his birth certificate and social security card. Likewise, officers testified that they discovered the handgun in Shaffer's bedroom, in a drawer that also held various-sized plastic baggies, often used in drug distribution. Finally, although officers found other indicia of drug trafficking in the living room (rather than the bedroom), the presence in the house of large quantities of methamphetamine, cash, a digital scale, among other items, strongly suggests Shaffer's drug-trafficking motive and involvement in a drug-trafficking enterprise. Viewing this evidence in the light most favorable to the government, we find that, collectively, it supports an inference that both firearms were within Shaffer's control.

Shaffer's protestation that he did not live at High Street—where he received mail, kept his motorcycle, and returned daily to meet his children after school—is unconvincing. A jury could surmise that, even if Shaffer spent large amounts of time away from the residence, he maintained "dominion over the premises." *Cf. Grubbs*, 506 F.3d at 439-440 (finding insufficient nexus because defendant was only a "temporary guest" who visited periodically and had no connection to the room where the gun was found).

The presence of indicia of drug trafficking at Shaffer's home also undermines his claim that the prosecution failed to prove that he possessed the firearms "in furtherance" of drug-trafficking offenses. The "in furtherance" prong of 18 U.S.C. § 924(c) requires more than mere "possession of a firearm on the same premises as a drug transaction." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). "[T]he firearm must be strategically located so that it is quickly and easily available for use." *Id.* However, in the absence of such apparently-strategic placement, a gun's use in advancing, promoting, or facilitating a drug-trafficking crime may be indicated by other factors, including whether the firearm was loaded, the legality of the firearm's possession, the type of firearm, the type of drug activity charged, and the circumstances surrounding the firearm's discovery. *Id.*

The parties do not dispute the illegality of Shaffer's possession, nor do they contest that the handgun was loaded when police found it. Additionally, the "critical-defense" rifle ammunition suggests a more sinister motive for the rifle than Shaffer's alleged intention to use the gun only to shoot raccoons. Finally, the $8,920.00 and 184 grams of methamphetamine found at the High Street residence indicates a drug-trafficking scheme. *See United States v. Penney*, 576 F.3d 297, 315 (6th Cir. 2009) (finding guns near $1,300 in cash along with scales and narcotics indicative of a nexus to drug-trafficking). Shaffer's reliance on *United States v. Leary*, 422 F.

App'x 502 (6th Cir. 2011), does not provide him any cover. In *Leary*, the police found guns alongside less than four grams of crack cocaine—nearly 50 times less than the amount of drugs found in the High Street residence. Moreover, *Leary* makes clear that "a 'specific nexus' can be seen [when] . . . the very existence of [large quantities of drugs and money] on the premises may be seen to warrant a gun for protection." *Leary*, 422 F. App'x at 512.

The district court did not err in denying Shaffer's acquittal as to his firearms charges.

**Sentencing**

Finally, Shaffer argues that his sentence is procedurally and substantively unreasonable. Based on the presentence report, the district court assessed a base offense level of 34 for Shaffer and enhanced it by eight levels, resulting in a total offense level of 42. The court also assessed Shaffer a criminal history level V, in light of his prior convictions. The district court imposed a within-Guidelines sentence of 420 months. We afford a presumption of reasonableness to sentences that are within the applicable Guidelines range. *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008). Furthermore, unless a sentence contains "significant procedural error," we apply the highly deferential abuse-of-discretion standard to our review. *Id.* A "significant procedural error" exists where, for example, a court "fails to calculate (or improperly calculates) the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). But, if a Guidelines-range calculation error does not affect the defendant's ultimate sentence, then the error is harmless, and we need not remand the case for re-sentencing. *See United States v. Carson*, 560 F.3d 566, 590 (6th Cir. 2009).

Shaffer attacks the district court's base offense level determination, the application of the § 3553(a) factors to Shaffer's sentence enhancements, and the district court's calculation of his

criminal history level. He also challenges the district court's refusal, based on the court's finding that Shaffer lied under oath, to grant him a downward variance.

With regard to the district court's calculation of his base offense level, Shaffer alleges that the district court erred because its offense-level assessment resulted from the presentence report's finding that the California conspiracy involved 680 grams of methamphetamine.[2] Shaffer argues that the district court should have relied upon only the 184 grams of actual methamphetamine recovered during the August 25, 2016, search at High Street. Using that smaller amount would have resulted in a lower base offense level. But, "[a] district court may generally rely on the [presentence report's] facts unless the defendant produces evidence that contradicts the [presentence report's] findings," *United States v. House*, 872 F.3d 748, 752 (6th Cir. 2017), and it may "approximate the quantity of the controlled substance" involved in an offense. *United States v. Davis*, 981 F.2d 906, 911 (6th Cir. 1992). Shaffer did not rebut the presentence report's findings, except to offer the alternative, lower amount. Thus, given the district court's broad discretion, the court acted within its right by relying on the presentence report's calculation of drug quantity. The district court's determination of a base offense level of 34 was not procedural error.

Shaffer next complains of improper sentence enhancements, which he frames as the district court's failure to adequately consider the 18 U.S.C. § 3553(a) factors. Shaffer's § 3553(a) argument is ill-conceived and unsubstantiated, especially given the district court's lengthy consideration and analysis of the § 3553(a) factors. At best, his claims boil down to two objections

---

[2] The presentence report explained that in Shaffer's second trip to California, which he took in July 2016, he purchased half a pound of methamphetamine—approximately 226 grams. During Shaffer's third trip to California, in August 2016, he purchased two pounds of methamphetamine, or 907 grams. The presentence goes on to say that, "[t]he total amount of methamphetamine from [Shaffer's] admissions total 24 ounces, or 680 grams of crystal methamphetamine." It is not clear how the presentence reached this number based on the admission that Shaffer returned two-and-a-half pounds, or 1,133 grams, of methamphetamine. Regardless, any miscalculation is immaterial, as our caselaw urges underestimating the quantity of drugs attributable to a defendant, *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2017), and because both 680 grams and 1,133 grams result in a base offense level of 34. *See* U.S.S.G. §2D1(c)(3).

to the calculation of his offense level. First, Shaffer asserts that he should not have received a four-level enhancement for his "leadership role" because he was not a leader in the California conspiracy. Second, he argues that although the jailhouse conspiracy involved a detention center, the two-level detention-center enhancement should not be applied to his base level of 34, which was assessed relative to the California conspiracy.

These arguments have no merit. The evidence presented at trial supported the inference that Shaffer orchestrated the trips between the High Street residence and California, and testimony from his co-conspirator's trial confirmed his role as a leader. The application of the leadership enhancement was reasonable. Shaffer's challenge to the detention-center enhancement amounts to a dispute about whether the district court properly grouped the offenses. The sentencing guidelines clearly allow for the grouping of substantially similar offenses, and these conspiracies are undeniably similar, thus appropriately considered together for sentencing purposes. U.S.S.G. § 3D1.2. Moreover, when the propriety of grouping is less certain, the guidelines allow courts to make an assessment on a case-by-case basis. *Id.* There is no error in this case and, even if there were, it would be considered harmless, because the removal of either enhancement would still result in a guidelines range of 360 months to life. The sentence therefore remains unaffected.

Shaffer also challenges the enhancement of his criminal history score, which the district court applied in light of a prior robbery conviction. Shaffer argues that the conviction fell outside of the 15-year window of relevance. Again, however, assuming Shaffer is correct, removing the enhancement—which would place Shaffer in category IV for criminal history—would not have altered Shaffer's sentence. Any error here is harmless.

Finally, Shaffer challenges the district court's refusal to grant him a downward variance, contending that this denial made the resulting sentence substantively unreasonable. He argues that

the district court's reasoning for denying a variance—Shaffer's dishonesty on the stand—was an improper justification. Notably, Shaffer does not contest the application of a two-level obstruction-of-justice enhancement to his offense level. Rather, he argues, somewhat confusingly, that because the enhancement already accounted for his obstruction, he should have had the benefit of a variance *despite* his obstruction. But, Shaffer has not rebutted the presumption of reasonableness that we apply to his within-Guidelines sentence. *See* Gall, 552 U.S. at 51. Accordingly, we find that the imposition of a 420-month sentence was not an abuse of discretion.

## CONCLUSION

For the reasons set out above, we **AFFIRM** the district court's judgment approving Shaffer's convictions and sentence.