**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.                                                    No. 01-4004

OMAR JACKSON,
           *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CR-00-77)

Argued: October 29, 2001

Decided: February 7, 2002

Before LUTTIG, TRAXLER, and KING, Circuit Judges.

Affirmed by published opinion. Judge Luttig wrote the opinion, in which Judge Traxler and Judge King joined.

## COUNSEL

**ARGUED:** Craig Stover Cooley, Richmond, Virginia, for Appellant. Stephen Wiley Miller, Assistant United States Attorney, Richmond, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Olivia N. Hawkins, Assistant United States Attorney, Richmond, Virginia, for Appellee.

**OPINION**

LUTTIG, Circuit Judge:

Omar Jackson appeals his conviction and sentence for possession of a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). He contends that the district court erred by denying his motion to suppress statements he made to the arresting officer regarding the presence of a firearm in his vehicle and his prior drug use and also by improperly defining the term "unlawful user" in the statute.* We conclude that the district court did not err, and, accordingly affirm.

I.

The facts as found by the district court are as follows. At approximately 2:40 a.m. on March 3, 2000, Omar Jackson's van, along with all other vehicles passing by, was stopped at a Richmond, Virginia, traffic checkpoint, the purpose of which was to verify that drivers complied with various state traffic laws, J.A. 103. Officer Mills approached Jackson's van and smelled a strong odor of marijuana as soon as Jackson rolled down the window. J.A. 49. The officer asked to see Jackson's license, but Jackson responded that he did not have one. When the officer asked whether Jackson had drugs or weapons in the car, Jackson informed him that he had a rifle in the back. The officer could see an AK-47 in plain view. The officer asked Jackson to step out of the van and asked whether Jackson's license was suspended. When Jackson admitted that it was, the officer placed him under arrest and read him his *Miranda* warnings. J.A. 50. The district court found that Jackson subsequently admitted that he had smoked marijuana earlier that evening. J.A. 50. Additionally, the officer testified that Jackson admitted to smoking marijuana twice a day for "some years." J.A. 54.

---

*Jackson also claims that the district court misapplied the Sentencing Guidelines by failing to credit him for acceptance of responsibility and for declining to depart downward. Neither claim has merit, and we do not address them further.

Jackson's next encounter with the police occurred on May 11, 2000. Officer Wendell conducted a traffic stop involving a car in which Jackson was a passenger. Wendell testified that he spotted a weapon on the dashboard, which turned out to belong to Jackson. J.A. 58. Wendell then discovered that the ATF had issued a warrant for Jackson relating to the incident of March 3.

A grand jury returned a superseding indictment charging Jackson with two counts of possession of a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). At a bench trial, the judge found Jackson guilty of Count I, which related to possession of a firearm on March 3. The judge found Jackson not guilty of Count II, concluding that his firearm possession on May 11 occurred too long after the alleged drug use. J.A. 97-99. This appeal ensued.

## II.

Jackson argues that the district court erred by denying his motion to suppress his admission that he had a firearm in the van and his various admissions regarding his drug use. He primarily contends that he was in custody from the time the officer approached his van and that anything he told the officer prior to receiving his *Miranda* warnings is inadmissable. Appellant's Br. at 12-13.

We have held that routine traffic stops are not custodial and therefore do not require *Miranda* warnings. *See United States* v. *Sullivan*, 138 F.3d 126, 131 (4th Cir. 1998); *see also Berkemer* v. *McCarty*, 468 U.S. 420, 440 (1984) (holding that "persons temporarily detained pursuant to [traffic] stops are not 'in custody' for the purposes of *Miranda*"). To be sure, roadblocks in which all cars are stopped and at which several police cars are present differ from ordinary traffic stops. But it is hard to see why these differences would render such stops custodial. Indeed, in the ordinary traffic stop, the motorist believes from its inception that the officer suspects something is amiss. And while the added show of police force at a roadblock may make escape more difficult, the motorist's freedom of action is no more curtailed than at an ordinary traffic stop, which the Supreme Court has concluded does not amount to "formal arrest," and therefore does not trigger *Miranda*. *See*, *e.g.*, *Berkemer*, 468 U.S. at 440 ("It is

settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest.") (internal quotation omitted); *see also United States* v. *Parker*, 262 F.3d 415, 419 (4th Cir. 2001).

Traffic stops do, however, constitute Fourth Amendment seizures "so that when the purpose justifying the stop is exceeded, the detention becomes illegal unless a reasonable suspicion of some other crime exists." *Sullivan*, 138 F.3d at 131. Although Officer Mills' question regarding whether Jackson had any guns or firearms in the van exceeded the purpose of the roadblock (to enforce Virginia's traffic laws), Officer Mills smelled a strong odor of marijuana as he approached the van, before he asked Jackson any questions. This provided Officer Mills with "a reasonable, articulable suspicion that criminal activity [wa]s afoot," *Illinois* v. *Wardlow*, 528 U.S. 119, 123 (2000), which, in turn, justified a "brief, investigatory stop," *id.* at 122-23 (discussing *Terry* v. *Ohio*, 392 U.S. 1 (1968)), allowing Officer Mills to ask whether Jackson had any drugs in the van. Additionally, during this *Terry*-like stop, Officer Mills was fully justified in inquiring into whether Jackson had any weapons in the van. *Cf. Pennsylvania* v. *Mills*, 434 U.S. 106, 109-12 (1977) (finding no Fourth Amendment violation where an officer who had made a routine traffic stop and had no reason to suspect foul play asked the driver to exit the vehicle, because this reduced the possibility "that the driver c[ould] make unobserved movements," thereby reducing "the likelihood that the officer w[ould] be the victim of an assault").

Because Officer Mills' actions violated neither Jackson's rights under *Miranda* nor his Fourth Amendment rights, and because, as the district court found, Jackson admitted that he had smoked marijuana earlier that evening *after* Officer Mills gave him his *Miranda* warnings, the district court did not err by denying the motion to suppress.

## III.

Jackson next argues that the district court erred in construing the statute under which he was convicted. Section 922(g) provides, in relevant part, "[i]t shall be unlawful for any person . . . (3) who is an unlawful user of or addicted to any controlled substance . . . to . . . possess . . . any firearm." The statute nowhere defines "unlawful

user," and Jackson contends that he is therefore entitled to "the most limiting construction," Appellant's Br. at 15. He argues that to violate the statute, one must be in possession of a controlled substance *at the same time one possesses a firearm. Id.*

Contrary to Jackson's rule-of-lenity argument, one would have to give the words a meaning they will not bear to reach his desired result. *See*, *e.g.*, *Johnson* v. *United States*, 529 U.S. 694, 713 n.13 (2000) ("Lenity applies only when the equipoise of competing reasons cannot otherwise be resolved . . . ."); *Smith* v. *United States*, 508 U.S. 223, 239 (1993) ("The mere possibility of articulating a narrower construction, however, does not by itself make the rule of lenity applicable."). Section 922(g)(3) does not forbid possession of a firearm *while unlawfully using* a controlled substance. Rather, the statute prohibits *unlawful users* of controlled substances (and those addicted to such substances) from possessing firearms.

While we do not doubt that the exact reach of the statute is not easy to define, we agree with the government that this is not a borderline case. The officer testified that he smelled marijuana as he approached the car and that Jackson admitted to smoking marijuana twice a day for many years, including earlier that evening. Given the evidence, Jackson violated the plain meaning of the statute. *Cf. United States* v. *Purdy*, 264 F.3d 809 (9th Cir. 2001) (upholding section 922(g)(3) against vagueness challenge).

In fact, the grand jury indicted Jackson on two counts of violating section 922(g)(3). The district court acquitted Jackson on the second count, which alleged possession of a firearm several months later. The district court was unwilling to use evidence of drug use months earlier to convict, finding that the prosecution must establish "a pattern of use and recency of use." J.A. 97-98. The district court did not err in applying the statute to Jackson's conduct; rather, the court applied the statute reasonably.

## *CONCLUSION*

For the aforementioned reasons, the judgment of the district court is affirmed.

*AFFIRMED*