UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

SHANE MICHAEL NEWMAN,
*Defendant-Appellant.*

No. 03-4947

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
Norman K. Moon, District Judge.
(CR-03-48)

Submitted: May 28, 2004

Decided: June 17, 2004

Before MOTZ and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

## COUNSEL

Roland M. L. Santos, Harrisonburg, Virginia, for Appellant. John L. Brownlee, United States Attorney, Joseph W. H. Mott, Assistant United States Attorney, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Shane Michael Newman was charged with conspiracy to possess with intent to distribute fifty grams or more of methamphetamine, 21 U.S.C. § 846 (2000) (Count One), three counts of using, carrying, and possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c) (2000) (Counts Two, Three, and Five), and three counts of possession of a firearm while an unlawful user of a controlled substance, 18 U.S.C. § 922(g)(3) (2000) (Counts Four, Six, and Seven). According to the Government, Counts Three and Four, which charged conduct occurring in February 2002, related to Dana Lambert's initial purchase of methamphetamine from Newman in February 2002. Counts Five and Six, charging illegal conduct subsequent to the date referenced in Counts Three and Four, related to Lambert's purchase of methamphetamine from Newman later that month. Count Two alleged illegal conduct in the summer of 2001, and Count Seven alleged a § 922(g)(3) violation on February 24, 2002.

A jury convicted Newman on all counts, and the district court sentenced him to 780 months in prison. He now appeals. We affirm.

I

Testimony at trial revealed that Newman was an established methamphetamine dealer in Woodstock, Virginia, by the summer of 2001. Newman generally distributed the drug in his apartment bedroom. He had a number of regular customers. Jeremy Peace lived with Newman from January 2002 until his arrest on February 24, 2002. Peace testified that Newman offered him cigarettes, gas money, and free rent in exchange for Peace's selling Newman's methamphetamine to Peace's regular customers.

Witnesses testified that Newman had a black handgun, which he almost always wore or had near his person when he distributed methamphetamine. A law enforcement official stated that a .45 handgun was properly registered to Newman. Several witnesses testified that Newman used methamphetamine frequently; Peace said that

Newman used it more than once each day during the time the two men lived together.

## II

Peace challenges the sufficiency of the evidence on Counts Two, Five, and Six. A defendant challenging the sufficiency of the evidence "bears a heavy burden." *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997)(internal quotation marks and citation omitted). To determine if there was sufficient evidence to support a conviction, we consider whether, taking the evidence in the light most favorable to the Government, substantial evidence supports the jury's verdict. *Glasser v. United States*, 315 U.S. 60, 80 (1942). We review both direct and circumstantial evidence and permit "the [G]overnment the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). Witness credibility is within the sole province of the jury, and we will not reassess credibility. *United States v. Saunders*, 886 F.2d 56, 60 (4th Cir. 1989).

Counts Two and Five charged Newman with violating § 924(c) in the summer of 2001 and in February 2002, respectively. Lisa Hoover testified that she and her boyfriend, a methamphetamine user, visited Newman's apartment in the summer of 2001. Newman and her boyfriend each had methamphetamine and decided to try each other's drug. When they sat on the bedroom floor to begin sampling the drugs, Newman pulled a black handgun from his pants and placed it underneath a nearby nightstand. These facts are sufficient to establish that the firearm "furthered, advanced, or helped forward a drug trafficking crime." *See United States v. Lomax*, 293 F.3d 701, 705 (4th Cir.), *cert. denied*, 537 U.S. 1031 (2002). The jury could have interpreted Newman's handling of the gun as a demonstration that he protected his drug supply. It is noteworthy that the gun was not far from Newman's person during the time Hoover and her boyfriend were in the bedroom.

Counts Five and Six related to the later of Newman's two February 2002 distributions of methamphetamine to Dana Lambert.* Lambert

---

*Newman is incorrect when he claims in his brief that the conduct charged in Counts Five and Six actually occurred in April 2003.

testified that she bought methamphetamine from Newman two or three times between the end of January and February 20, 2002. Newman was always armed with a small black handgun, which he either wore or had on a nightstand in his bedroom, where the distributions occurred. On these facts, the evidence was sufficient to convict Newman on Count Five. *See id.* Lambert also testified that Newman was using methamphetamine daily, and Peace testified that Newman was using methamphetamine more than once a day during this period. The evidence thus was sufficient to convict Newman on Count Six. *See United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002); *United States v. Purdy*, 264 F.3d 809, 812-13 (9th Cir. 2001).

III

Newman had a loose association with the Warlocks, an outlaw motorcycle gang. Prior to trial, defense counsel expressed his concern that any mention of this association could prejudice the defense, particularly in light of recent publicity about the Warlocks in the local press. The court asked that no Warlocks connection be played up because it was not important to the case.

The prosecutor, trying to show that Newman possessed the handgun for the sole purpose of drug distribution, asked Lambert whether Newman belonged to a gun club. Lambert replied, "He was associated with the Warlocks." Defense counsel objected and, at a sidebar, moved for a mistrial. The court instructed the jury to disregard Lambert's answer.

On appeal, Newman contends that Lambert's unresponsive answer unfairly prejudiced the jury and that any curative action short of declaring a mistrial was error. We conclude that the district court did not abuse its discretion in denying the motion for mistrial. *See United States v. Dorlouis*, 107 F.3d 248, 257 (4th Cir. 1997) (stating standard of review). Lambert's unresponsive answer was brief and isolated, and the district court promptly gave a curative instruction. Jurors are presumed to follow a court's instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Further, contrary to Newman's position, there was substantial evidence against him, and the momentary mention of the Warlocks could not have affected the outcome of the trial.

IV

Newman contends that Counts Four and Seven charge the same offense and therefore are multiplicitous. It is clear that Count Seven charged a violation of § 922(g)(3) occurring on February 24, 2002, and that Count Four charged such a violation during an earlier distribution to Lambert in February. Thus, the counts do not charge the same crime.

V

We accordingly affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us and argument would not aid the decisional process.

*AFFIRMED*