**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-4426**

───────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAHSIR JUSTIN CLAYBROOKS,

Defendant - Appellant.

───────────────

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  N. Carlton Tilley, Jr., Senior District Judge.  (1:21-cr-00119-NCT-2)

───────────────

Argued:  September 22, 2023                        Decided:  January 4, 2024

───────────────

Before GREGORY and RICHARDSON, Circuit Judges, and Patricia Tolliver GILES, United States District Judge for the Eastern District of Virginia, sitting by designation.

───────────────

Affirmed by published opinion.  Judge Gregory wrote the opinion, in which Judge Richardson and Judge Giles joined.

───────────────

**ARGUED:**  Aaron Bader Wellman, IVEY, MCCLELLAN, SIEGMUND, BRUMBAUGH & MCDONOUGH, LLP, Greensboro, North Carolina, for Appellant.  Julie Carol Niemeier, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  **ON BRIEF:**  Sandra J. Hairston, United States Attorney, Mary Ann Courtney, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

───────────────

GREGORY, Circuit Judge:

Jahsir Claybrooks pleaded guilty to a single count of possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). In its presentence report (PSR), the probation office alleged that, at the time of the offense, Claybrooks was an unlawful user of controlled substances and was under indictment for a felony. Under 18 U.S.C. § 922(g)(3) and § 922(n), respectively, this made him a "prohibited person" barred from possessing a firearm. The probation office accordingly calculated his sentence based on Claybrooks's "prohibited person" status. Claybrooks objected to the finding that he was an unlawful user, but failed to object to the PSR's statement that he was under indictment. One week before his sentencing, the Supreme Court held in *New York State Rifle & Pistol Association v. Bruen* that the government must justify firearms prohibitions by showing that they are consistent with the nation's historical tradition of firearms regulations. *See* 142 S. Ct. 2111, 2130 (2022). Without analyzing whether §§ 922(g)(3) and (n) are consistent with that historical tradition, the district court adopted both findings and sentenced Claybrooks to seventy months' incarceration—seven months above the range recommended by the United States Sentencing Guidelines.

Claybrooks now mounts both facial and as-applied challenges to § 922(g)(3), claiming that he is not an unlawful drug user under the statute and that the statute itself is unconstitutionally vague. He also argues that the district court erred in its determination that he was under indictment at the time of his offense of conviction and abused its discretion by imposing an above-guidelines sentence. Finally, Claybrooks contends that the district court

2

erred by not conducting a *Bruen* analysis of the three firearms statutes at issue.  Because we conclude that the district court did not commit reversible error, we affirm.

I.

On June 24, 2020, around 2:24 a.m., a suspect broke into Sportsman Supply and Grocery in Liberty, North Carolina.  The suspect used a torch to remove metal bars over a window before breaking the glass and entering.  Once inside, he used an aluminum baseball bat to break several display cases and steal their contents.  In total, he absconded with twenty-four handguns and three long guns, as well as several firearms accessories and lottery tickets.

Four days later, in Findlay, Ohio, a local sheriff's deputy conducted a traffic stop on Claybrooks and his brother Javier as Claybrooks was driving.  The deputy initiated a search after smelling unburnt marijuana in the car.  That search ultimately yielded eight grams of marijuana, plastic baggies, a digital scale, a "Port-a-Torch," cell phones, and two handguns—a Glock 10mm and a Glock 9mm.  The serial numbers on the two guns matched two of the handguns taken from the Sportsman Supply and Grocery.  The deputy arrested Claybrooks and Javier for the Sportsman Supply robbery.

The next day, investigators obtained and executed a search warrant for Claybrooks's residence in Greensboro, North Carolina.  J.A. 169.  In a trashcan in the driveway, deputies found several price tags for guns, two black ski masks, an "Axis" glove, an empty "Port-a-Torch" box, an empty baton weapon box, and an empty extended magazine box.  *Id.*  Deputies also searched a 2006 Acura in the driveway and located walkie talkies, cell

phones, a gun lock, six grams of methamphetamine, a driver's license belonging to Claybrooks, and a receipt for the torch. *Id*. A search of Claybrooks's bedroom revealed a 9mm 50-round drum magazine in the closet and a speed loader on the dresser. *Id*.

During a search of one of the cell phones located during the Ohio vehicle search, police found yet more evidence that Claybrooks and his brother committed the Sportsman Supply robbery. The search revealed photographs of handguns stolen from Sportsman Supply and a photograph of the store's broken window. J.A. 170.

Claybrooks was extradited from Ohio to North Carolina on July 28, 2020, and was released on bond on related state charges in September 2020. On March 29, 2021, a federal indictment was filed. While searching his home a month later, police again found a rifle and 32.13 grams of marijuana. Claybrooks remained in custody on North Carolina state matters through November 24, 2021, when he was served with a federal arrest warrant.

## II.

Claybrooks pleaded guilty to one count of possession of stolen firearms, in violation of 18 U.S.C. § 922(j). J.A. 3, 9–23. In the PSR, the probation office assigned a base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(B). J.A. 128, 135–36. This base offense level was based upon an allegation that Claybrooks possessed a semiautomatic firearm capable of accepting a high-capacity magazine, as well as the probation officer's assessment that Claybrooks was a "prohibited person" at the time of the offense. *Id.* After applying certain stipulations in the plea agreement, the PSR calculated a Total Offense

4

Level of 29 and a Criminal History Category of II, resulting in a guidelines range of 97 to 120 months.  J.A. 136, 147.

Claybrooks objected to the draft PSR both based on his designation as a "prohibited person" and on the PSR's assessment that conduct relevant to the offense involved a semiautomatic firearm capable of accepting a large capacity magazine.  J.A. 158, 160.  At sentencing, the district court sustained Claybrooks's objection to the related conduct enhancement but overruled his objection to his "prohibited person" designation, resulting in a new base offense level of 14.  J.A. 80–83.[*]  Following other adjustments not relevant to this appeal, the court found a Total Offense Level of 23 for a resulting guidelines range of 51 to 63 months.

Prior to imposing a sentence, the court acknowledged Claybrooks's difficult life circumstances, his history of substance abuse, and his engagement in classes during his incarceration.  J.A. 97–98.  But the court was nonetheless concerned with the number of

---

[*] In addition to being an unlawful drug user, the district court found that Claybrooks was a prohibited person because he was under indictment at the time of the offense.  J.A. 80–81.  Claybrooks disputes this.  During the sentencing hearing, the district judge twice referenced an indictment related to a 2019 case.  Charges of "felony possession of stolen goods" and "felony obtain property by false pretense" are listed in the "Pending Charges" section of the presentence report.  The description associated with the charges lists the date of the offenses but omits the date of indictment.

There are questions as to whether the district court properly concluded that Claybrooks was under indictment at the time of his offense, but this Court need not reach them.  To establish that a defendant is a prohibited person under § 2K2.1, the sentencing guidelines only require a finding that the defendant was *either* an unlawful user of a controlled substance *or* was under indictment at the time of the offense.  *See* U.S.S.G. § 2K2.1 cmt. n.3.  Because law and evidence support finding that Claybrooks was an unlawful user when he possessed the stolen firearm, any potential error concerning the district court's § 922(n) finding was harmless.

5

guns, the danger of the AR-15, and the fact that Claybrooks was under pretrial supervision when he committed the offense of conviction. After considering these factors and the parties' sentencing positions, the court determined that an upward variance to seventy months' imprisonment was warranted. J.A. 98. The court's judgment was entered on July 14, 2021. J.A. 107–13. Claybrooks timely appealed.

III.

Since the release of the first draft PSR, Claybrooks has insisted that he is not a prohibited person under U.S.S.G. § 2K2.1(a)(6). The guidelines commentary defines a "prohibited person" as "any person described in 18 U.S.C. § 922(g) or § 922(n)." U.S.S.G. § 2K2.1 cmt. n.3. The statutes cited in the guidelines forbid possession of a firearm by an unlawful drug user and by any person under indictment for a felony, respectively.

When determining whether the district court properly applied the advisory Sentencing Guidelines, this Court "review[s] the district court's legal conclusions de novo and its factual findings for clear error." *United States v. Layton*, 564 F.3d 330, 334 (4th Cir. 2009). "Under the clear error standard, we will only reverse if left with the definite and firm conviction that a mistake has been committed." *United States v. Savage*, 885 F.3d 212, 225 (4th Cir. 2018) (internal quotations omitted). This standard of review applies to Claybrooks's as-applied challenge to § 922(g)(3).

Admittedly, the legal contours of "unlawful user" of a controlled substance are not well defined within the statute. As an aid, this Circuit has used the test articulated in *United States v. Purdy*, 264 F.3d 809 (9th Cir. 2001), to determine whether a person can be thus

6

characterized under § 922(g)(3). To convict someone under the statute (or, as here, enhance a sentence), *Purdy* requires that the government prove "that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his purchase or possession of a firearm." *Purdy*, 264 F.3d at 813. *See also United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002) (upholding § 922(g)(3) conviction where defendant admitted to using marijuana from childhood until two months before the offense); *United States v. Edwards*, 38 F. App'x 134, 138 (4th Cir 2002) (unpublished) (stating that the drug use must be consistent, prolonged, and close in time to gun possession); *United States v. Sperling*, 400 F. App'x 765, 767 n.3 (4th Cir. 2010) (unpublished) (noting the Ninth Circuit's "persuasive" decision in *Purdy*).

Claybrooks does not pretend that he never used drugs. In fact, he admitted to drug use during his interview with a probation officer. According to the PSR, Claybrooks "admitted he was addicted to marijuana and had been smoking the substance on a daily basis. He noted he last used marijuana in 2021." J.A. 171. Claybrooks "reported that he started smoking marijuana on a daily basis in high school . . . .[,] noted he became addicted to marijuana and it helped him be 'mellow' and numbed his feelings . . . . , [and] noted that marijuana is his drug of choice and he last smoked marijuana in 2021." J.A. 181–82.

Despite these admissions, Claybrooks insists that his drug use was not contemporaneous with his possession of the stolen firearms at issue. He says construing his statements as evidence that his marijuana use was contemporaneous with the offense would require assuming facts not in the record. According to Claybrooks, his admissions about addiction and daily use were about past, not current, activity. For example, the PSR

7

consistently refers to his drug use in past tense (*i.e.*, "he was addicted"; "he had been smoking on a daily basis"; "it helped him be 'mellow'"). J.A. 171, 181–82. While the start date of his drug use is well established, the end date is ambiguous, he argues.

One can inject some ambiguity into Claybrooks's statements in the presentence report, but any haziness is quickly clarified by the context of his statements. During his interview, Claybrooks relayed that marijuana was his drug of choice and admitted that he continued smoking it until 2021, which is well past the commission of his state and federal crimes. He described himself as "addicted" to marijuana, offered no evidence that he ever sought treatment for drug addiction or took efforts to cease using the controlled substance, and did not indicate that he had overcome the addiction.

Taken together, these statements are enough to conclude that Claybrooks admitted to being an unlawful drug user contemporaneous with his arrest. This is particularly so under the preponderance of the evidence standard that applies to sentencing enhancements. Our sister circuits have upheld *convictions* for § 922(g)(3) based on similar circumstances. *See United States v. Cowan*, 469 F.3d 386, 392 (5th Cir. 2006) (upholding a § 922(g)(3) conviction where defendant admitted to using marijuana from age thirteen to two months prior to offense); *United States v. Edmonds*, 348 F.3d 950, 953–54 (11th Cir. 2003) (concluding defendant was unlawful drug user where he admitted to history of drug use, possessed marijuana when arrested, and tested positive for its use while on bond). As this Court explained in *Jackson*, § 922(g)(3) "does not forbid possession of a firearm *while unlawfully using* a controlled substance. Rather, the statute prohibits unlawful users of

8

controlled substances (and those addicted to such substances) from possessing firearms." *Jackson*, 280 F.3d at 406.

Citing an unpublished case of this circuit, Claybrooks asserts that any uncorroborated admission of drug use—like the admissions contained in the presentence report—must be supported by "substantial independent evidence" to support a conviction. *See United States v. Sperling*, 400 F. App'x 765, 767–68 (4th Cir. 2010). In *Sperling*, the defendant admitted use of drugs within a couple months of his arrest, but a police dog failed to locate drugs in his vehicle, and a federal agent could not find criminal or medical records of drug use by Sperling. Finding no substantial evidence outside of the defendant's admission, this Court vacated his conviction.

Claybrooks's case is distinguishable. First, *Sperling* concerns a conviction under § 922(g)(3); this case is about guidelines calculations under U.S.S.G. § 2K2.1. While the government must prove its case beyond a reasonable doubt to sustain a conviction, the government need only establish the applicability of relevant conduct guidelines provisions by a preponderance of the evidence. *United States v. McGee*, 736 F.3d 263, 271 (4th Cir. 2013). In light of this much lower threshold of proof, and given the record before us, we cannot conclude that the district court erred when it assessed that Claybrooks's drug use occurred contemporaneous with his arrest.

Second, Claybrooks's statements to probation are better corroborated. Unlike in *Sperling*, police searches on the day of Claybrooks's Ohio arrest produced marijuana and drug paraphernalia. In fact, the officer who initiated the traffic stop searched the vehicle only after he smelled a "strong odor" of unburnt marijuana. Thus, Claybrooks was at least

in possession of marijuana at the time of the offense, adding color to his statements in the presentence report. Moreover, Claybrooks completed his PSR interview while in a custodial setting where easy access to illicit drugs was limited or nonexistent. Considering this detention, the PSR's use of the past tense is best understood as discussion of his engagement with drugs pre- and post-detention. When read through that lens, Claybrooks is not claiming that his addiction to drugs was distant or infrequent, but rather was continuous until 2021.

Claybrooks was arrested with drugs, admitted to drug use prior to his arrest, and offered a timeline of use that immediately abuts that arrest. His own statements, and other evidence available to the court below, are sufficient to support the sentencing court's conclusion that Claybrooks was an unlawful user of controlled substances as contemplated by the statute. Consequently, we affirm the district court's finding and reject the as-applied challenge on appeal.

IV.

Claybrooks next asserts that § 922(g)(3) is unconstitutionally vague. Constitutional challenges and questions of statutory construction are reviewed de novo. *United States v. Hager*, 721 F.3d 167, 204 (4th Cir. 2013).

This Circuit previously noted that "the exact reach of the statute is not easy to define" but declined to reach the question of whether the statute itself violates the void-for-vagueness doctrine. *Jackson*, 280 F.3d at 406. Because Claybrooks fails in his as-applied challenge, we again decline to reach that question.

10

The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited, and defines it in a manner that does not encourage arbitrary and discriminatory enforcement. *Hager*, 721 F.3d at 183; *United States v. Williams*, 553 U.S. 285, 304 (2008). However, "a statute need not spell out every possible factual scenario with 'celestial precision' to avoid being struck down on vagueness grounds." *Hager*, 721 F.3d at 183 (quoting *United States v. Whorley*, 550 F.3d 326, 334 (4th Cir. 2008)).

Providing clarity and notice to defendants remains a vital judicial value. But when a defendant's conduct falls squarely within the confines of the disputed statute, he abandons the right to challenge that statute for vagueness. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 18–19 (2010) (stating that a defendant who "engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others"); *United States v. Hasson*, 26 F.4th 610, 616 (4th Cir. 2022) (declining to reach a facial vagueness challenge where defendant did not dispute that his actions fell within the statute); *United States v. Hosford*, 843 F.3d 161, 170 (4th Cir. 2016) (same). As discussed *supra*, Claybrooks clearly falls within the statute's definition of an unlawful drug user. He therefore cannot mount a facial challenge to the statute.

## V.

On June 23, 2022, the Supreme Court issued its decision in *New York State Rifle & Pistol Association v. Bruen*, indicating that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142

11

S. Ct. 2111, 2126 (2022). One week later, the district court sentenced Claybrooks without reference to the Supreme Court's new standard. Claybrooks now asserts that the district court erred by not conducting a *Bruen* analysis of the three firearms statutes at issue, even though Claybrooks failed to object below.

Prior to *Bruen*, courts evaluating the constitutionality of a gun regulation balanced the individual's Second Amendment right to possess a gun with the state's interest in promoting safety. *See generally, District of Columbia v. Heller*, 554 U.S. 570 (2008). *Bruen* replaced this balancing test. Instead, *Bruen* clarifies that when the plain text of the Second Amendment covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then rebut that presumption "by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

To reiterate, this case implicates three distinct criminal statutes restricting firearm possession. Claybrooks pleaded guilty to violating § 922(j), which prohibits possession of stolen firearms, and his sentence was enhanced based on findings that he was a prohibited person under both §§ 922(g)(3) and 922(n). If Claybrooks had raised *Bruen* below, this Court might have reached the question of whether the statutes survive *Bruen*'s renewed analysis. But he did not. Because Claybrooks raises issues relating to *Bruen* for the first time on appeal, the appropriate standard of review is plain error. *See United States v. Allen*, 466 F.3d 522, 530 (4th Cir. 2006). Pursuant to the plain error test, the appellant may secure relief if he demonstrates that (1) the sentencing court erred, (2) such error was plain, and (3) the error affected substantial rights. *Id*. The appellate court should then correct the

error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993).

Claybrooks's *Bruen* arguments cannot survive plain error review. This Circuit lacks precedent establishing that any of the relevant statutes violate the Second Amendment right to keep and bear arms. Nor have our sister circuits made much progress on the question. The contours of *Bruen* continue to solidify in district and appellate courts across the nation, and yet there is no consensus. *See, e.g.*, *United States v. Gore*, No. 2:23-cr-04, 2023 WL 2141032 (S.D. Ohio Feb. 21, 2023) (finding that § 922(j) is constitutional because of longstanding prohibitions on the receipt of stolen goods); *United States v. Greer*, No. 4:17-CR-94(1), 2023 WL 4747383 (E.D. Tex. July 24, 2023) (citing *Gore*); *United States v. Daniels*, 77 F.4th 337, 342 (5th Cir. 2023) (concluding that § 922(g)(3) contradicts the plain text of the Second Amendment and is not aligned with the history and tradition of firearms regulation); *United States v. Rodriguez*, No. 22-10896, 2023 WL 4044409 (5th Cir. June 16, 2023) ("There is no binding precedent holding § 922(n) unconstitutional, and it is not clear *Bruen* dictates such a result."); *United States v. Posey*, No. 2:22-cr-83, 2023 WL 1869095, at *6 (N.D. Ind. Feb. 9, 2023) (assuming without deciding that an unlawful user is part of "the people" and his possession of a firearm is protected by the Second Amendment); *United States v. Alston*, No. 5:23-CR-21-1, 2023 WL 4758734 (E.D.N.C. July 18, 2023) (magistrate recommending that § 922(g)(3) be found unconstitutional); *United States v. Costianes*, No. 1:21-cr-458, 2023 WL 3550972 (D. Md. May 18, 2023) (indicating agreement that the Second Amendment's plain text does not cover prohibited persons under § 922(g)(3) but declining to "definitely resolve" that question).

13

There can be no plain error where neither this nor other circuits have resolved the issues in dispute. *United States v. Wynn*, 684 F.3d 473, 480 (4th Cir. 2012). As such, we cannot fault the district court for declining to submit the statutes to a *Bruen* analysis in the absence of a motion or request by the defendant.

## VI.

Finally, Claybrooks challenges the reasonableness of his sentence. The sentencing court imposed an upward variance to seventy months from the recommended range of fifty-one to sixty-three months' imprisonment. A sentence is procedurally unreasonable if the district court commits a "significant procedural error," such as: (1) imposing "a sentence based on clearly erroneous facts"; (2) failing to explain the sentence adequately; or (3) failing to address the defendant's nonfrivolous arguments. *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court is required to provide "an individualized assessment" based on the facts before the court, and to explain adequately the sentence imposed "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* at 50. "A sentence may be substantively unreasonable if the court relies on an improper factor or rejects policies articulated by Congress or the Sentencing Commission." *United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006).

"This Court reviews all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *United States v. Torres-Reyes*, 952 F.3d 147, 151 (4th Cir. 2020) (cleaned up).

14

Claybrooks argues that the sentencing judge placed undue weight on the nature and circumstances of the offense and insufficient weight on the history and characteristics of the defendant. This argument is without support. Just before imposing the sentence, the judge discussed the number and type of guns stolen, specifically noting the danger posed by AR-15 assault rifles. J.A. 97. He then noted that Claybrooks was under indictment and pretrial supervision at the time of the offense. *Id*. Stating that these factors merited an upward variance, the judge cited Claybrooks's difficult childhood, history of substance abuse, and recent steps toward self-improvement as factors that would help minimize the upward variance given. *Id*. 78. The judge also conducted an analysis of the § 3553(a) factors. This is the sort of individualized assessment required under the law. As such, the district court judge did not abuse his discretion by varying upwards by seven months.

## VII.

For the foregoing reasons, we find that the district court did not err in applying U.S.S.G. § 2K2.1(a)(6) and did not plainly err when it did not conduct a *Bruen* analysis of the relevant statutes. We further conclude that the district court did not abuse its discretion by sentencing Claybrooks to seventy months' imprisonment. Therefore, we affirm.

*AFFIRMED*